Argued and submitted March 31, 2000, affirmed May 8, 2002

## STATE OF OREGON,
*Appellant,*

*v.*

## BRIAN LUCE CHRISTENSON,
*Respondent.*

C973106CR; A103630

45 P3d 511

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, Public Defender.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Ceniceros, Senior Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

The state indicted defendant on charges of manufacture, delivery, and possession of marijuana. ORS 475.999; ORS 475.992. Defendant moved to suppress all evidence obtained as a result of a warrantless search of his residence. The trial court granted the motion, and the state appeals. We affirm.

The facts are largely undisputed. On August 13, 1997, at approximately 9:20 a.m., defendant's neighbor made a call to 9-1-1, reporting that defendant's front door was open and that his two pit bull dogs were at large. The neighbor said that she had gone to the open front door and called in, with no response, and that she considered the circumstances "suspicious." Officer Rowe was dispatched in response to the call to perform a security check of the residence. When he arrived, he found that the front door was partially open and no sounds were coming from inside the house. The dogs were not in sight. He called for another officer. Officer Blunt arrived, and the two officers called into the house several times without response. They then entered the house with their guns drawn, announcing their presence. Officer Rowe testified that in his experience he has responded to reports of open doors and has rendered aid to sick people inside. The trial court found that, at the time they entered the house, the officers believed that "someone could have been injured or that perhaps a burglary had or might be taking place." The officers walked into the living room of the house, where they saw drug paraphernalia. They then walked down a hallway to the bedrooms and, through a partially open door, heard a loud humming sound and saw a bright light and growing marijuana. At this time, a house guest came out of one of the bedrooms. The officers interviewed her, and she told them how they could reach one of the residents. The officers were advised by their supervising officer to secure the residence until backup officers arrived.

Later in the morning, defendant called home, and an officer who answered the telephone told him to return home. On his return, defendant consented to a search of the house. The officers seized marijuana and related paraphernalia.

Defendant moved to suppress evidence of the warrantless entry and search under multiple provisions of the state and federal constitutions. The state asserted that the evidence was admissible because the officers obtained it through their entry into defendant's home under the authority of the community caretaker statute, ORS 133.033, which excused them from the otherwise applicable requirement of the state and federal constitutions to obtain a warrant before entering the home. The trial court granted defendant's motion, finding that,

> "while the officers indicated that they thought somebody possibly could be injured, they had no basis in fact for having that particular belief other than that the door was open and the dogs were running around. The court does not FIND that the purposes of the statute were intended to include the entry that took place in this particular case * * *. The court does not believe that there was an emergency or anything that is equal to the criteria listed in [ORS 133.033(2)(a)(A) through (C)]."

On appeal, the state continues to assert that the officers' entry of defendant's home was authorized as an exercise of the community caretaking function. ORS 133.033 provides, as relevant:

> "(1)   Except as otherwise prohibited by law, any peace officer of this state, as defined in ORS 133.005, is authorized to perform community caretaking functions.
>
> "(2)   As used in this section, 'community caretaking functions' means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public. 'Community caretaking functions' includes, but is not limited to:
>
> "(a)   The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:
>
> "(A)   Prevent serious harm to any person or property;
>
> "(B)   Render aid to injured or ill persons; or
>
> "(C)   Locate missing persons."

The state asserts that the officers' entry is justified specifically under subsection (2)(a)(A), because the officers subjectively believed (1) that a burglary might have been in progress, (2) that someone in the house was ill or injured, or (3) that the dogs were still at large and the officers needed to find out how to secure them for the safety of the public. Considering those circumstances and the officers' experience in dealing with similar situations, the state contends that the officers' belief that it was necessary to enter the house was objectively reasonable. We agree with the state that the circumstances justified a limited investigation for the purpose of determining whether the residents were at home to secure their dogs. For the reasons explained, however, we reject each of the offered explanations as a rationale for *entering* the house.

■    A police officer's authority under ORS 133.033(2)(a) to enter a residence to carry out a community caretaking function arises under circumstances in which "it reasonably appears to be necessary" to do so for one of the reasons listed in the statute. As the state agrees, although the statute does not require an actual emergency, the need to enter a house must be based on an officer's objectively reasonable perceptions. The subjective beliefs of the officers are not, therefore, dispositive. Further, the state also agrees that the statutory community caretaking function is subject to the limitations on warrantless searches contained in Article I, section 9, of the Oregon Constitution.[1] *State v. Bridewell*, 306 Or 231, 239-40, 759 P2d 1054 (1988); *State v. Dahl*, 323 Or 199, 205, 915 P2d 979 (1996); *State v. Will*, 131 Or App 498, 504, 885 P2d 715 (1994). Thus, the potential breadth of the statutory community caretaking function is constitutionally circumscribed.

■    Because the trial court concluded that the officers' actions were not authorized by the statute, it did not consider whether the actions satisfied constitutional standards. We

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

too will first consider whether the officers acted within the scope of their statutory authority to enter property to perform community caretaking services. In the state's view, the officers' entry was justified under ORS 133.033(2)(a)(A), to prevent harm to persons or property. The state cites specifically the officers' beliefs that a person in the house was injured, that a burglary was in progress, or that the dogs needed to be secured. The trial court considered and rejected the officers' proffered rationales, finding that the officers "had no basis in fact for having [the belief that someone inside the house was injured] other than that the door was open and the dogs were running around." We are bound by the trial court's findings of historical fact, *State v. Bost*, 317 Or 538, 541, 857 P2d 132 (1993). However, whether the officers' subjective beliefs were objectively reasonable under the circumstances is a question of law. *See State v. Morgado*, 154 Or App 296, 299, 962 P2d 698 (1998).

These are the facts that the officers knew at the time they entered the house: The front door was open, two potentially dangerous dogs were at large, there were no sounds coming from the house, and the officers had received no response to their calls. In our view, an open door on a summer morning is not, in and of itself, a circumstance that could give rise to a reasonable belief that entry is necessary to prevent harm to persons or property. It is simply too common an event to create a concern of harm in the absence of other signs of trouble, such as evidence of a forced entry or a medical emergency; here, there were no such indications. We have held that an open front door does not justify entry into a house under the emergency aid doctrine or the community caretaking exceptions to the warrant requirement of the Fourth Amendment to the United States Constitution under more suspicious circumstances than those that existed here. *State v. Bramson*, 94 Or App 374, 377-78, 765 P2d 824 (1988) (open front door, 30 degree temperature, vehicle in driveway, and report of residents being out of town did not give police officers probable cause to believe that burglary had been or was being committed); *State v. Apodaca*, 85 Or App 128, 133, 735 P2d 1264 (1987) (open front door and broken screen do not constitute "strong showing" that a seriously injured person might be inside the house or that a burglary was in progress or had been committed).

We turn to the dogs on the lam. No doubt, they were happy. But their escape gave rise to a legitimate safety concern for them and others. The officers reasonably responded to that concern by calling into the house to see if anyone was at home to secure the dogs. However, the dogs' escape, which was likely coincident to the door being open, did not advance the justification for entering the house, because entry into the house was not reasonably necessary to secure the dogs. If the dogs were in the house, they undoubtedly would have greeted the officers, and closing the door would have secured them. If the dogs were not in the house, then the purpose of securing them could not have been served by entering the house. Finally, the fact of the dogs being at large neither supports nor negates the officers' rationales regarding the possibility that a sick person was inside or that a burglary had occurred. In short, the escape of the dogs does not enhance the justification for entering the house.

Finally, silence in the house does not suggest a reason for concern or lack of concern. It is completely neutral. We agree with the trial court that the circumstances do not give rise to a reasonable belief that entry was necessary to prevent harm to persons or property.

The state argues that, even if the circumstances of this case do not fall within one of the categories specifically described in ORS 133.033(2)(a), that list is not exclusive, and the entry was justified as the community caretaking function of investigating a possible burglary. For the reasons that we have already given, the circumstances described do not give rise to a reasonable belief that a burglary had taken place.

We reach the same conclusion under Article I, section 9, of the Oregon Constitution. Under that provision, warrantless entries are *per se* unreasonable unless they fall within one of a few specifically established exceptions to the warrant requirement. There is no community caretaking exception under the Oregon Constitution, although there are analogous exceptions, such as the "emergency doctrine" or the "emergency aid doctrine." *Bridewell*, 306 Or at 236. In *Bridewell*, the Supreme Court held that an open front door does not provide probable cause of criminal activity that will justify a warrantless entry under the emergency exception to the warrant requirement.

A closer analogy is the "emergency aid doctrine." In *State v. Follett*, 115 Or App 672, 840 P2d 1298 (1992), we described and applied that exception:

"We conclude that the Emergency Aid Doctrine provides an exception to the warrant requirement of Article I, section 9, when these conditions are met:

"(1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

"(2) The emergency must be a true emergency—the officer's good faith belief alone is insufficient.

"(3) The search must not be primarily motivated by an intent to arrest or to seize evidence.

"(4) The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency."

*Id.* at 680. The emergency aid doctrine is similar but not identical to the statutory community caretaking exception. The constitutional exception permits entry only in a "true emergency." We held in *State v. Martofel*, 151 Or App 249, 252, 948 P2d 1253 (1997), that a true emergency exists if police officers have an objectively reasonable belief that an emergency existed at the time of the warrantless entry. Considering the circumstances known to the officers at the time that they entered defendant's house, we conclude that the trial court correctly concluded that there was no true emergency and that it did not err in suppressing the evidence.

The state contends that, in determining that the officers did not have a reasonable belief that entry was necessary, the trial court disregarded the officers' experience indicating that there are sometimes sick people inside of homes that have open doors. We have not disregarded that evidence, but it simply is insufficient to counter the lack of other suspicious or worrisome circumstances in this case. Further, as the Supreme Court noted in *Bridewell*, 306 Or at 240, officers should not be discouraged from entering a home to render emergency assistance. The fact that an entry may violate the

state or federal constitution means only that incriminating evidence arising from the entry must be suppressed.

Affirmed.