HUMPHREYS, Judge,
concurring in the result.
I agree that the trial court correctly denied Kyer’s motion to suppress. However, I continue to believe that the officers’ initial entry into the Kyer residence was proper under the community caretaker exception to the warrant requirement. And, because the warrantless entry was reasonable, the officers properly searched the residence after obtaining the voluntary consent of Kyer’s mother. Thus, although I would *488 affirm the judgment of the trial court, I concur only in the result reached by the majority.
I.
The officers arrived at Kyer’s home at approximately 4:00 in the morning. At that time, the front door was open “wide enough for [Officer Davis] to walk through it without touching the door.” It was dark and raining. There were no exterior lights on, and no lights were on inside the home. Because of these circumstances, Officer Davis and Detective Story believed that “[s]omeone had forced entry or broken into the home.” Accordingly, the officers “made a ... plan,” discussing how they would respond if they “encounter[ed] any opposition.” The officers then “knocked on the door several times,” announcing their presence. There was no response. After waiting for “a couple” of minutes, the officers drew their firearms and flashlights and proceeded inside the home and up the stairs, “continuing to announce [their] presence” in “loud voice[s].”
Based on these facts, the trial court explicitly found that “it was appropriate for the officers to enter the residence,” reasoning that “the community caretaker doctrine and/or exigent circumstances permitted their entry into the residence.” In particular, the court found that the officers’ “initial contact or investigation was objectively reasonable,” also concluding that the “police officers in this case were [not] acting under a pretext.”
II.
As recognized by the majority, “[i]t is axiomatic that the ‘physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.’ ” Welsh v. Wisconsin, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)). Nevertheless, the Fourth Amendment protects people only from “unreasonable” searches and seizures. See *489 Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960); Verez v. Commonwealth, 230 Va. 405, 410, 337 S.E.2d 749, 752 (1985). For that reason, the United States Supreme Court has carved out a few delineated exceptions to the warrant requirement. United States District Court, 407 U.S. at 318, 92 S.Ct. at 2137.
For example, according to the “emergency doctrine,” a warrantless entry into a private residence is valid if there is a “reasonably perceived ‘emergency* requiring immediate entry as an incident to the service and protective functions of the police as opposed to, or as a complement to, their law enforcement functions.” United States v. Moss, 963 F.2d 673, 678 (4th Cir.1992); see also Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Reynolds v. Commonwealth, 9 Va.App. 430, 436-37, 388 S.E.2d 659, 663-64 (1990). That is, because
[t]he right of the police to enter and investigate in an emergency is inherent in the very nature of their duties as police ofñcers[,][a] warrantless search during an emergency situation is “justified, if not required, by the fact that ‘the preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties [sic].’ ”
Reynolds, 9 Va.App. at 437, 388 S.E.2d at 664 (quoting State v. Fisher, 141 Ariz. 227, 686 P.2d 750, 761 (1984)) (other citations omitted).[6]
*490 Similarly, the “community caretaker doctrine” authorizes a warrantless search conducted pursuant to an officer’s “community caretaking functions,” as long as the search is “totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.” Cady v. Dombrowski, 413 U.S. 433, 436-37, 441, 93 S.Ct. 2523, 2525-27, 2528, 37 L.Ed.2d 706 (1973) (affirming the warrantless search of the trunk of a car that had been towed to a garage pursuant to the “standard procedure” of a local police department). Although this Court has yet to apply the community caretaker exception to validate the warrantless search of a home, little distinction has been made between the circumstances governing the application of the community caretaker doctrine and those governing the application of the emergency exception to the warrant requirement, which unquestionably authorizes a warrantless entry into a private residence. Compare Commonwealth v. Waters, 20 Va.App. 285, 288-91, 456 S.E.2d 527, 529-30 (1995), and Barrett v. Commonwealth, 18 Va.App. 773, 776-79, 447 S.E.2d 243, 245-46 (1994), rev’d on other grounds, 250 Va. 243, 462 S.E.2d 109 (1995), with Reynolds, 9 Va.App. at 436-37, 388 S.E.2d at 663-64, and Shannon v. Commonwealth, 18 Va.App. 31, 34-35, 441 S.E.2d 225, 226-27, aff'd on reh’g en banc, 19 Va.App. 145, 449 S.E.2d 584 (1994).[7] Indeed, the non-exigent form of the emergency exception, also called the “emergency aid doctrine,” is often *491 deemed a subset of the community caretaker doctrine.[8]
Nevertheless, the community caretaker doctrine, like the emergency exception, is premised on the concept that police officers owe “ ‘duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis.’ ” Barrett, 18 Va.App. at 778, 447 S.E.2d at 246 (quoting Reynolds, 9 Va. App. at 436, 388 S.E.2d at 663 (citation omitted)); see also Wood v. Commonwealth, 27 Va.App. 21, 33, 497 S.E.2d 484, 490 (1998) (Annunziata, J., dissenting). Indeed, it is far from illogical to expect that police officers, as a necessary function of their profession, do much more than simply “investigate” crimes or wrongs that have already occurred or that have unfolded in their presence. To the contrary,
[p]olice have “complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses;” by design or default, the police are also expected to “reduce the opportunities for the commission of some crimes through preventive patrol and other measures,” “aid individuals who are in danger of physical harm,” “assist those who cannot care for themselves,” “resolve conflict,” “create and maintain a feeling of security in the community,” and “provide other services on an emergency basis.”
3 W. LaFave, Search and Seizure § 6.6, at 389-90 (1996); see also Wood, 27 Va.App. at 33, 497 S.E.2d at 490 (Annunziata, J., dissenting). Thus, “police [often] have occasion to enter premises without a warrant for a variety of ... purposes,” including fulfillment of their community caretaking duties. Wood, 27 Va.App. at 33, 497 S.E.2d at 490 (Annunziata, J., dissenting) (internal quotations omitted).
Accordingly, I would hold that the community caretaker exception, in its narrowest sense, must logically extend to the warrantless entry of homes, as long as the officer conducting *492 the search is acting appropriately within the doctrine and independent of his criminal investigatory duties.[9]
III.
The majority does not seriously contest the applicability of the community caretaker exception to a private residence, concluding instead that, under the circumstances of this case, “the facts would not justify an objectively reasonable officer to think [the] exception applied.” The majority reasons that, considering the lack of signs of forced entry and the absence of cries for help, the entry was objectively unreasonable. I disagree.
A.
The appropriateness of applying the community caretaker doctrine to a given factual scenario is determined by whether, based upon the totality of the circumstances, it was reasonable for the officer to believe that his or her actions were necessary for: (1) the protection of the owner’s property while it remains in police custody; (2) the protection of police against claims or disputes concerning lost or stolen property; or (3) protection *493 of the public and the police from physical danger. Williams v. Commonwealth, 42 Va.App. 723, 730, 594 S.E.2d 305, 309 (2004) (citing Reese v. Commonwealth, 220 Va. 1035, 1039, 265 S.E.2d 746, 749 (1980); South Dakota v. Opperman, 428 U.S. 364, 373-76, 96 S.Ct. 3092, 3099-3101, 49 L.Ed.2d 1000 (1976); Cady, 413 U.S. at 442-48, 93 S.Ct. at 2529-31). Specific factors to be considered .include: (1) whether the officer’s initial contact or investigation is reasonable; (2) whether the intrusion is limited; and (3) whether the officer is investigating criminal conduct under the pretext of exercising his community caretaker duties. Waters, 20 Va.App. at 290, 456 S.E.2d at 530. Overall, “[o]bjective reasonableness remains the linchpin of determining the validity of [the] action.” Id.; cf. Reynolds, 9 Va.App. at 437, 388 S.E.2d at 663-64 (applying objective reasonableness test to emergency exception to warrant requirement).
Under the circumstances of this case, I would hold that the officers’ warrantless entry into the home was justified pursuant to the community caretaker exception. The officers arrived at Kyer’s home at 4:00 a.m. It was dark and raining outside. No lights were on inside or outside the home. Yet, the front door to Kyer’s home stood open — wide enough that the officers could walk through it without touching the door. The officers announced their presence loudly, several times, and, after receiving no answer, they entered the home to determine whether anyone was in the home and whether those persons were in need of assistance. The officers made a limited “protective sweep,” motivated only by the safety and well-being of the residents. Moreover, as expressly found by the trial court, the officers did not enter the home under the pretext of searching for evidence of criminal activity.
Considering the totality of these circumstances, I would hold that the officers, acting out of “concern for the safety of the general public,” Cady, 413 U.S. at 447, 93 S.Ct. at 2531, reasonably believed that “there [might be] a difficulty requiring [their] general assistance.” Laney v. State, 117 S.W.3d 854, 861 (Tex.Ct.Crim.App.2003) (internal quotations omitted). Thus, I would affirm the trial court’s determination that the *494 officers’ limited entry was objectively reasonable and, as a result, constitutionally permissible pursuant to the community caretaker exception to the warrant requirement. Indeed, because the officers reasonably believed that “foul play” might have occurred, I am of the opinion that the officers “would have been derelict in their duty” had they not entered the residence. State v. Hetzko, 283 So.2d 49, 52 (Fla.Dist.Ct.App. 1973).
B.
The majority, however, citing State v. Christenson, 181 Or.App. 345, 45 P.3d 511 (2002), concludes that “an open door on a summer morning is not, in and of itself, a circumstance that could give rise to a reasonable belief that entry is necessary to prevent harm to persons or property.” Id. at 513 (emphasis added). Because Christenson is distinguishable from the present case in several key respects, I do not believe that its holding is persuasive under the circumstances of this case.
First, in Christenson, the investigating officers encountered an open door at 9:20 a.m., on a “summer morning.” Here, it was 4:00 a.m., dark, and raining. There is a significant difference between encountering an open door at 9:20 a.m. and encountering an open door at 4:00 a.m. That is, although it would not be particularly unusual to leave the front door ajar at 9:20 on a “summer morning,” it is markedly more suspicious to encounter an open door at 4:00 a.m., when it is still dark outside, it is raining, and the residents of the home are much more likely to be asleep.
Second, in Christenson, the issue before the court was not whether the officers’ conduct violated the warrant requirement of the Fourth Amendment to the United States Constitution. Rather, the Christenson court was interpreting a provision of the Oregon “community caretaker” statute, Or. Rev.Stat. § 133.033, which, inter alia, gives “officers of [that] state” the permission to enter “the premises of another” so as to “[p]revent serious harm to any person or property.” Or. Rev.Stat. § 133.033(2)(a)(A). Although the court noted that *495 the “community caretaking function is subject to the limitations on warrantless searches contained in Article I, section 9, of the Oregon Constitution,” 45 P.3d at 513, the Christenson court did not rule that the officers’ conduct, in addition to exceeding the scope of their statutory authority, also violated the Fourth Amendment to the United States Constitution. Rather, the court held only that the officers’ conduct could not be validated under the state constitution, reasoning that “[tjhere is no community caretaking exception under the Oregon Constitution.” Id. at 514 (emphasis added).
Third, in Christenson, the lower court granted the defendant’s motion to suppress, holding that “the officers had no basis in fact for having [the belief that someone inside the house was injured] other than that the door was open and the dogs were running around.” Id. at 513. The appellate court acknowledged that it was “bound by ... [this] finding[ ] of historical fact.” Id. Here, in contrast, the trial court found that the initial investigation was “objectively reasonable,” and denied the motion to suppress. We have held that “[t]he reasonableness of a police officer’s response in a given situation is a question of fact for the trial court[,] and its ruling will not be disturbed on appeal absent clear and manifest error.” Reynolds, 9 Va.App. at 437, 388 S.E.2d at 664; see also Shears v. Commonwealth, 23 Va.App. 394, 398, 477 S.E.2d 309, 311 (1996) (noting that this Court gives due weight to “a trial court’s finding that [an] officer was credible and [that the officer’s] inference was reasonable” (internal quotations omitted)). Accordingly, we, too, are “bound by ... [this] finding[ ] of historical fact,” Christenson, 45 P.3d at 513, specifically, that the warrantless entry was objectively reasonable.
Thus, I believe the significant disparities between the circumstances of the present case and those presented in Christenson render that case unsuitable to justify the majority’s legal position.
C.
Moreover, the majority’s underlying rationale — that the officers needed some “additional fact” to justify a warrantless *496 entry under the circumstances of this case — demonstrates confusion or a decided lack of understanding of the community caretaker exception to the warrant requirement. Citing Hill v. Commonwealth, 18 Va.App. 1, 441 S.E.2d 50 (1994), a case in which a panel of this Court authorized a warrantless entry premised on the exigent circumstances exception to the warrant requirement, the majority concludes that “something more” was needed here.
In Hill, the police department received a call from a neighbor, requesting that the police “send somebody out to check to see whether [Hill’s] house had been broken into.” Id. at 2, 441 S.E.2d at 50. The neighbor informed the police that Hill was out of town, that he had not been seen for two days, and that the front door to the house was open. See id. The officers went to the house to investigate. Upon their arrival, they noted that the front door “was open about twelve to fifteen inches,” and they rang the doorbell and knocked on the door. Id. After receiving no response, the officers “entered the home to investigate the possibility of a burglary.” Id. (emphasis added). While searching the home “in places where a burglar might hide,” the officers discovered marijuana and various drug paraphernalia. Id. at 2-3, 441 S.E.2d at 50-51.
On appeal, we held that the trial court properly denied Hill’s motion to suppress, reasoning that the exigent circumstances exception to the warrant requirement applied. See id. at 3, 441 S.E.2d at 51. We noted that, “[w]hen probable cause exists, exigent circumstances excuse the requirement of obtaining a warrant,” and concluded that, under the circumstances of that case, the officers had “probable cause to believe that Hill’s house had been unlawfully entered.” Id. at 4, 441 S.E.2d at 51 (emphasis added).
The exigent circumstances exception to the warrant requirement applies when, inter alia, “there is a clear showing of probable case at the time of entry,” and “the officers have strong reason to believe the suspects are present in the premises,” or that evidence will be destroyed absent an immediate entry. Id. at 3, 441 S.E.2d at 51 (citing Verez, 230 Va. *497 405, 337 S.E.2d 749). Thus, this exception is properly applied where, as in Hill, there is probable cause to believe that a crime has been or is being committed, and the officers enter the premises for the purpose of investigating that crime. See id.
The community caretaker exception, however, does not require a showing of probable cause. Rather, it requires an objectively reasonable belief that the officers’ conduct is necessary to provide aid or to protect members of the public from physical harm. See Williams, 42 Va.App. at 730, 594 S.E.2d at 309; Waters, 20 Va.App. at 290, 456 S.E.2d at 530. Moreover, unlike the exigent circumstances exception, the warrant-less entry must be “totally divorced” from a criminal investigation. Cady, 413 U.S. at 436-37, 93 S.Ct. at 2526-27. That is, the police officers must be acting in a protective, rather than crime-fighting, capacity.
Because the warrantless entry must be “totally divorced” from a criminal investigation, proof that a crime has been or is being committed adds nothing to a community caretaker analysis. But here, by opining that some “additional fact” would have justified the officers’ warrantless entry, the majority, in essence, seems to be requiring a showing of probable cause as a prerequisite for application of the community caretaker doctrine. That is, the majority implies that, in order to have an objectively reasonable belief that an individual is in need of assistance, the officers must also have probable cause to believe that a crime has been or is being committed. In practical effect, then, the majority is subsuming the community caretaker doctrine into the exigent circumstances exception. I simply cannot join in this result. See generally Laney, 117 S.W.3d at 860-61 (discussing the distinction between the community caretaker doctrine and the exigent circumstances exception); Mary Elisabeth Naumann, Note, “The Community Caretaking Doctrine: Yet Another Fourth Amendment Exception,” 26 Am. J.Crim. L. 325, 332 (1999) (“[T]he reasoning behind the community caretaker doctrine precludes an equation ... [with the] exigent circumstances *498 [exception] because the latter necessarily involves criminal considerations.”).
IV.
For these reasons, I would hold that the officers’ warrant-less entry was justified pursuant to the community caretaker exception to the warrant requirement. Had these officers’ worst fears been justified and had hindsight disclosed a resident either deceased or in desperate need of medical assistance, I doubt that either the resident, assuming he or she survived, or the general public would accept the majority’s reasoning that it would not be “objectively reasonable” for police to investigate such suspicious circumstances. Thus, although I agree that the trial court did not err in denying Kyer’s motion to suppress, I disagree with the analysis of the majority and, consequently, concur only in the result.

. Although the "emergency doctrine” is often equated to the "exigent circumstances” exception to the warrant requirement, the two differ slightly. When officers conduct an emergency entry for purposes of investigating a crime, the emergency is considered an "exigency” for purposes of the exigent circumstances exception, and the officers must have probable cause before they can enter the residence. See Commonwealth v. Thornton, 24 Va.App. 478, 484, 483 S.E.2d 487, 490 (1997) (recognizing that, "[a]mong the circumstances accepted as providing ‘exigent circumstances' for a warrantless search, are those where a true ‘emergency’ exists”). If, however, the officers effectuate an emergency entry for a purpose unrelated to the investigation of a crime — for example, to provide emergency aid to an injured resident — then the entry is valid as long as the officers had an objectively reasonable belief that their help was needed. In this latter sense, the emergency excep *490 tion is functionally equivalent to, and sometimes deemed a subset of, the community caretaker doctrine.

. As this Court recognized in Wood v. Commonwealth, 27 Va.App. 21, 28, 497 S.E.2d 484, 487 (1998), the United States Supreme Court has yet to decide whether a warrantless intrusion into an individual’s home may be supported pursuant to the community caretaker exception. Nevertheless, we have applied the exception to uphold warrantless searches in the context of a search of an automobile. See Williams v. Commonwealth, 42 Va.App. 723, 731, 594 S.E.2d 305, 309 (2004); Barrett, 18 Va.App. at 778, 447 S.E.2d at 246. We have also extended this doctrine to permit warrantless searches of pedestrians or citizens that an officer reasonably believes are in distress or in need of assistance. See Terry v. Commonwealth, 23 Va.App. 87, 91, 474 S.E.2d 172, 174 (1996); Waters, 20 Va.App. at 289-90, 456 S.E.2d at 529-30.

. See note 1, supra.

. We have consistently required that any warrantless search, pursuant to either the community caretaker exception or the emergency exception, must be factually unrelated to an intent to search for evidence of illegal activity. See Reynolds, 9 Va.App. at 438, 388 S.E.2d at 664 (applying the emergency exception and noting that "[n]o evidence in the record suggest[ed] that the [officers’] entry into appellants’ house ... was a pretext to search for contraband or illegal activity rather than to look for possible victims and to secure the property,” and finding that the officers "act[ed] in good faith under the circumstances and according to their responsibilities as law enforcement officers”); see also Williams, 42 Va.App. at 731, 594 S.E.2d at 309 (noting that a search, pursuant to impoundment of a vehicle and corresponding community caretaking functions, "must not be a pretextual surrogate for an improper investigatory motive”); Waters, 20 Va.App. at 290, 456 S.E.2d at 530 (applying the community caretaker exception in the context of a police/pedestrian encounter and stating that "[t]he appropriateness of applying the community caretaker doctrine to a given factual scenario is determined by,” among other things, "whether ... the officer is not investigating criminal conduct under the pretext of exercising his community caretaker function”).