MEIERHENRY, Justice
(dissenting).
[¶ 75.] I respectfully dissent on issue one. We should not expand the Fourth Amendment community caretaker exception to homes for the following reasons: first, there is a lack of persuasive precedent from state and federal courts; second, the majority opinion’s proposed standard does not give clear direction to law enforcement; third, the recognized police community caretaker function as it relates to automobiles is distinguishable; and, fourth, there is no reason to do so in light of the emergency and exigent circumstances exceptions already recognized.

Constitutional Protection Against Search of a Home Without a Warrant

[¶ 76.] The Fourth Amendment to the United States Constitution and Article VI, § 11 of the South Dakota Constitution provide:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant(s) shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
In Hess, Justice Konenkamp reiterated that, except for “specifically limited exceptions, every law enforcement entry into a home for the purpose of search and seizure must be made with a warrant.” 2004 SD 60, ¶ 22, 680 N.W.2d at 324-25. The warrant requirement was explained as follows:
We earlier noted that the Fourth Amendment guarantees the right to be free from unreasonable searches and *250 seizures. As the United States Supreme Court explained, ‘physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed!.]’ Accordingly, it is well established that ‘searches and seizures inside a home without a warrant are presumptively unreasonable.’ Generally, this means that, with some specifically delineated exceptions, every law enforcement entry into a home for the purpose of search and seizure must be made with a warrant.
The State has the burden of proving that a specific search falls into a delineated and limited exception. Legal analysis is limited to ‘the facts perceived by the police at the time of the entry, not as subsequently uncovered.’
Id. ¶¶ 22-23 (internal citations omitted).
[¶ 77.] The emergency and exigent circumstances exceptions are two of the “delineated and limited exceptions” permitting warrantless entry into a home. Id. ¶ 24. The United States Supreme Court and this Court have recognized and applied the emergency and exigent circumstances exceptions. Mincey, 437 U.S. at 392, 98 S.Ct. at 2413; Hess, 2004 SD 60, ¶ 24, 680 N.W.2d at 325 (citing Payton, 445 U.S. at 590, 100 S.Ct. at 1382; Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Heumiller, 317 N.W.2d at 129 (citations omitted)).

Most Courts Do Not Apply the Community Caretaker Exception to Homes

[¶ 78.] Initially, it is important to note that the United States Supreme Court has only applied the community caretaker exception to warrantless automobile searches. Cady, 413 U.S. 433, 93 S.Ct. 2523. The Court has not recognized or applied the community caretaker exception to a warrantless search of a home. In fact, most jurisdictions have not expanded the community caretaker exception to a warrantless search of the home. See McGough, 412 F.3d at 1238 (“Were we to apply the community caretaking exception ... in this case, we would undermine the [Fourth] Amendment’s most fundamental premise: searches inside the home, without a warrant, are presumptively unreasonable.”); United States v. Erickson, 991 F.2d 529 (9th Cir.1993) (rejecting the application of the community caretaker exception to the warrantless entry into a home); Pichany, 687 F.2d 204 (stating the court would not permit the extension of the community caretaker function to permit the warrantless search of a warehouse); Gill, 755 N.W.2d 454 (“We now hold that a law enforcement officer’s entry into a dwelling place cannot be justified alone on the basis that the officer is acting in a community caretaking capacity.”).
[¶ 79.] The majority cites to several cases that have applied the exception to entry into a home. The main case relied upon in the majority opinion, Rohrig, was intentionally limited to its own facts and later distinguished by the Sixth Circuit as standing for the proposition that the community caretaker function was applicable as a nuisance abatement measure. 98 F.3d at 1524 n. 11. In Rohrig, the Sixth Circuit stated that it wished “to emphasize the fact-specific nature of [its] holding.” Id. (cited by the majority to support the proposition that the community caretaker exception applies to entry into a home, see supra ¶ 36 n. 8). It is also important to recognize that Rohrig was recently qualified by the Sixth Circuit in Washington, 573 F.3d at 287-88. The court in Washington distinguished Rohrig on the basis that the police acted in Rohrig to stop the extremely loud music to prevent further harm to the community. The court went on to add the requirement that “trae immediacy that absolves an officer from the need to apply for a warrant” is the crucial *251 question in cases involving exceptions to the Fourth Amendment’s warrant requirement. True immediacy was a factor that was not present in the case now before this Court as the officers had the time and opportunity to apply for a warrant before entering the apparently empty home.
[IT 80.] The majority also cites several cases to support the proposition that “[m]any courts have extended the community caretaker exception to the entry of a home.” Supra ¶ 36 n. 8. However, a closer reading of these cases illustrates that no case stands for this proposition as broadly as it is being advanced in the majority opinion. In sum, all of the cited cases are distinguishable or actually stand for a different proposition. See Nord, 586 F.2d at 1289 (stating the facts of the case had certain “emergency features” unlike those found in the case before this Court); York, 895 F.2d at 1029-30 (holding that no search had taken place when police entered defendant’s home, at the request of defendant’s guests, to assist in removing guest’s daughter and belongings from home because defendant was intoxicated, belligerent, and had threatened them); Rohrig, 98 F.3d 1506 (holding under the specific facts presented that the community caretaker exception was applicable as a nuisance abatement measure); Ray, 88 Cal.Rptr.2d 1, 981 P.2d at 937 (involving an apartment with an open door with the “ransacked” interior in plain view); Hoth, 50 Conn.App. 77, 718 A.2d 28 (applying the emergency exception to the warrant requirement); Williams, 962 A.2d at 219 (involving the stop of a pedestrian on a traffic median); Crawford, 659 N.W.2d 537 (holding that stop of defendant’s vehicle was reasonable under the community caretaker exception); Blair, 31 Kan.App.2d 202, 62 P.3d 661 (reversing defendant’s conviction and holding that emergency doctrine did not apply to facts of case); Alexander, 721 A.2d at 277 (imposing a reasonableness standard, not advancing the community caretaker exception specifically); Davis, 497 N.W.2d at 920 (“[AJlthough administering emergency aid is referred to as one of the community caretaking functions of the police, this should not have any effect on the law governing the emergency aid exception.” The court went on to reverse the conviction on the grounds that report of shots being fired at motel did not give officers reasonable belief that someone could potentially be in need of immediate aid, which precluded officers from entering motel room under emergency aid exception.); Lemieux, 726 N.W.2d at 787 (“[Cjoncluding that the warrantless entry was justified under the emergency-aid exception to the warrant requirement.”); Garbin, 739 A.2d at 1018-19 (involving an intoxicated person operating his vehicle in his garage who opened his garage door at the request of the police who then “observed the tires of defendant’s truck spinning, creating smoke, and the front bumper pushing against the rear of the garage.”); Christenson, 181 Or.App. 345, 45 P.3d 511 (holding that police entry into defendant’s home without a warrant was not justified under community caretaker statute or the emergency aid doctrine exception); Laney, 76 S.W.3d 524 (involving a welfare check of a child who was known to be in the home of a man twice arrested for indecency with a child); Ziedonis, 707 N.W.2d at 570 (applying a three-part test with a four-part subtest distinguishable from that advanced in the majority opinion in evaluating the community caretaker exception to a factual scenario involving a one and one-half hour vicious dog “emergency”). Instead, these cases together stand for the proposition that the community caretaking function of police is an aspect of the emergency exception and *252 emergency aid exception. The community caretaker exception, however, is an independent and broader exception to the Fourth Amendment and has not been expansively recognized by any authority outside of the context of motor vehicles.

Proposed Standard Unclear and Ambiguous

[¶ 81.] The standard and application of the community caretaker exception espoused by the majority opinion leaves too much ambiguity and too little direction for law enforcement. Allowing police to enter a private home based on a mere possibility that someone inside might be in danger obliterates the Fourth Amendment guarantee against unreasonable searches and seizures. The majority states at one point that “the purpose of community caretaking must be the objectively reasonable independent and substantial justification for the intrusion; the police action must be apart from the detection, investigation, or acquisition of criminal evidence; and the officer should be able to articulate specific facts that, taken with rational inferences, reasonably warrant the intrusion.” Supra ¶ 41. The standard advanced and the standard actually applied by the majority, however, are quite different.
[¶ 82.] The accepted standard for the community caretaker exception to the Fourth Amendment comes from Cady, 413 U.S. 433, 93 S.Ct. 2523 (involving the search of a vehicle for a gun reasonably believed to be located within). Cady emphasized the importance of reasonableness in construing Fourth Amendment protections. Id. at 439, 93 S.Ct. at 2527. The only controlling test provided by the United States Supreme Court limits this exception to vehicles. Further, this test is not only limited to the search of vehicles, but it also requires that the police action involved be “totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.” Id. at 441, 93 S.Ct. at 2528. The standard provided by the majority does not include this language. The majority requires a lower threshold than the one provided by the United States Supreme Court for vehicles. The Fourth Amendment’s strong protections against entry into the home without a warrant should require greater protections and more stringent standards than those afforded to automobiles.

Distinction Between Vehicle and Home Searches

[¶ 83.] Constitutionally speaking, the difference between the search of a car and the search of a home is extremely important. Id. at 439, 93 S.Ct. at 2527. The United States Supreme Court in Cady outlined some of the reasons for the constitutional differences in treatment between vehicles and homes by stating:
Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature.
Id. at 441, 93 S.Ct. at 2528. After broadly laying the analytical framework for the community caretaker doctrine in the vehicular context, the majority applies that exception to the search of a house because “homes cannot be arbitrarily isolated from the community caretaking equation.” Supra ¶ 41. On the contrary, most jurisdictions have isolated homes from the community caretaker equation. This isolation is not arbitrary, but based on the constitu *253 tional differences between homes and automobiles.
[¶84.] Constitutional jurisprudence in the United States has created rules distinguishing searches of cars and homes. See Rinehart, 2000 SD 135, ¶ 7, 617 N.W.2d at 843-44 (permitting the search of a vehicle under the community caretaker exception) (citing Cady, 413 U.S. 433, 93 S.Ct. 2523); Payton, 445 U.S. at 586, 100 S.Ct. at 1380 (“[Pjhysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed[.]”); Katz, 389 U.S. at 357, 88 S.Ct. at 514 (“[Ejvery law enforcement entry into a home for the purpose of search and seizure must be made with a warrant.”). Thus, the analysis from Cady need not be extended to searches of a home. See supra ¶ 35. Emergency and Exigent Circumstances Exceptions
[¶ 85.] Even without the community caretaker exception, police can respond and enter a home in emergencies to preserve life or property. Likewise, police can enter a home without a warrant with probable cause if the police reasonably believe “that delay in procuring a search warrant would gravely endanger life, risk destruction of evidence, or greatly enhance the likelihood of a suspect’s escape.” Hess, 2004 SD 60, ¶ 24, 680 N.W.2d at 325. The majority opinion discusses these two exceptions at length.
[¶ 86.] In this case, had the officers had an objectively reasonable basis to conclude someone was still in the house and was in danger of asphyxiation from the gas, they may have been justified in entering without a warrant under the emergency doctrine. For example, had the neighbor who approached the officers told them he saw five people go into the house but only saw four leave, the officers may have been justified in entering without a warrant. However, by permitting officers to enter the home without an objectively reasonable basis to believe someone was inside and in danger, this Court would be handing the police unfettered discretion to enter someone’s home. The result could serve to undermine the thrust of the Fourth Amendment and the notion that “searches and seizures inside a home without a warrant are presumptively unreasonable.” Id. at 324 (citing Payton, 445 U.S. at 586, 100 S.Ct. at 1380). The majority’s expansion of the community caretaker exception to the Fourth Amendment, through the standard adopted, goes too far and disrupts the balance between necessary police action and the constitutional protections afforded to South Dakotans. We should maintain the natural balance between these sometimes competing interests that weighs in favor of obtaining a warrant prior to entering an individual’s home. This is especially so in this case where there was no objective basis to conclude a “true immediacy that absolves an officer from the need to apply for a warrant” was present. Washington, 573 F.3d at 287-88 (distinguishing Rohrig, 98 F.3d at 1524).
[¶ 87.] It is also interesting to note that under the facts of this case, there was no reason why the officers could not have secured the home and sought a search warrant. Had the officers added up all the clues — swapped gas meter, ammonia fumes, propane tank, Sudafed purchases, and freezer-hose-bucket contraption — the officers would have had probable cause for a warrant.
[¶ 88.] For these reasons, I respectfully dissent.
[¶ 89.] SABERS, Retired Justice, joins this dissent.