*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1375**

State of Minnesota,
Respondent,

vs.

Gregory Thomas Wandzel,
Appellant.

**Filed May 2, 2016
Affirmed
Toussaint, Judge\***

Anoka County District Court
File No. 02-CR-14-1806

Lori M. Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, Minnesota (for respondent)

Steven T. Grimshaw, Minneapolis, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and

Toussaint, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**TOUSSAINT**, Judge

On appeal from his conviction of multiple counts of drug possession and sale, following proceedings under Minn. R. Crim. P. 26.01, subd. 4, appellant argues that the district court erred in denying his motion to suppress evidence seized after law enforcement's initial warrantless entry into his home, which was based on an unidentified report of "suspicious activity," and officers made no subsequent observations indicating that anyone inside the home was in any kind of distress or in danger of imminent injury. Because the district court did not err when it concluded that the emergency-aid exception applied to the search of appellant's home, precluding his suppression motion, we affirm.

**FACTS**

This appeal arises from Gregory Thomas Wandzel's four convictions for controlled-substance crimes. The relevant facts are as follows.

Around 9:00 a.m. on Sunday, August 22, 2012, Saint Francis police officers Stemme and Rehling responded to a citizen report of "suspicious activity" at Wandzel's home. The caller reported to the 9-1-1 dispatcher that the home's front door was wide open and one of its garage doors appeared as if a car had driven into it from inside the garage. According to Stemme, the first responder, the caller had driven by and "thought it was a burglary in progress." The officers arrived within minutes of the call and confirmed that the front door was ajar and the garage was slightly bowed outward, consistent with the caller's description.

After several minutes, the officers approached the front door, knocked loudly on the open door, and yelled to announce their presence. Having received no response after 30 seconds, they entered to "clear the home," ensure that no one inside was injured, and to determine if any potential burglars were still inside. Stemme testified that he first cleared the garage; he confirmed that a car had backed into the garage door and no one was inside the garage. He then went to the basement, where he found a substantial marijuana growing operation but no sign of activity. Rehling, who had gone upstairs, found Wandzel asleep and unclothed on a bed in one of the upstairs bedrooms. Once he found Wandzel, Rehling called Stemme upstairs for assistance.

Together, the officers identified themselves and attempted to wake Wandzel, but he was initially unresponsive. When Wandzel eventually awoke, the officers asked him his name, whether there were others inside the house, and whose house it was. Wandzel was initially unable to respond; the officers detained him for their safety and moved on to clear the remaining upstairs rooms. Rehling knocked on two locked doors and eventually kicked the doors down to enter. Although no one was present in either room, Rehling found psychedelic-mushroom growing operations in both. The officers cleared the home in under four minutes and then contacted the local drug task force, which later secured and executed a search warrant in the home.

Based largely on the evidence obtained from execution of the search warrant, the state charged Wandzel with first-degree sale of hallucinogens, second-degree possession of hallucinogens, fifth-degree sale of marijuana, and fifth-degree possession of marijuana. *See* Minn. Stat. §§ 152.021, subd. 1(3), .022, subd. 2(a)(3), .025, subd. 1(a)(1),

subd. 2(a)(1) (2012). Wandzel moved to suppress the evidence discovered during the initial entry into the home, which the district court denied. Following a stipulated-facts trial on the state's evidence, Wandzel was convicted of all charges. *See* Minn. R. Crim. P. 26.01, subd. 4. Wandzel now appeals his conviction, challenging the denial of his suppression motion.

## D E C I S I O N

Both the United States and Minnesota Constitutions guarantee an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "[W]arrantless searches and seizures are *per se* unreasonable unless they fall under an established exception." *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992). "[W]arrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393–94, 98 S. Ct. 2408, 2414 (1978) (quotation omitted). "If a warrantless search does not fall within a proper exception, its fruits must be suppressed." *Hummel*, 483 N.W.2d at 72.

One such exception to the warrant requirement is the emergency-aid doctrine. *See Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947 (2006) ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." (quotation omitted)). Under the emergency-aid exception, police officers, "in pursuing a community-caretaking function, may enter a home without a warrant to render emergency assistance to an injured occupant or to protect

4

an occupant from imminent injury." *State v. Lemieux*, 726 N.W.2d 783, 787–88 (Minn. 2007) (quotation omitted). The state bears the burden of demonstrating that the police officers' conduct was justified under the exception. *Id.* at 788.

To determine the reasonableness of an officer's belief that there was an emergency, courts apply an objective standard. *Id.* In *Lemieux*, our supreme court applied the following three-prong reasonableness test: (1) "[t]he police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property"; (2) "[t]he search must not be primarily motivated by intent to arrest and seize evidence"; and (3) "[t]here must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *Id.* Ultimately, "'the question is whether the officers would have been derelict in their duty had they acted otherwise.'" *Id.* at 788 n.2 (quoting 3 Wayne R. LaFave, *Search and Seizure* § 6.6(a), at 452–53 (4th ed. 2004)).

*Lemieux* relied on the reasoning of other courts that had "concluded that police entry is justifiable under the emergency-aid exception where police have reasonable grounds to believe that a burglary is in progress or has recently occurred." *Id.* at 789 (citing, among others, *Murdock v. Stout*, 54 F.3d 1437, 1441–42 (9th Cir. 1995) (upholding warrantless entry during investigation of suspected burglary, where facts known to police indicated that resident was not responding and circumstances suggested that resident should have been present), and *Carroll v. State*, 646 A.2d 376, 384 (Md. 1994) (upholding warrantless entry based on open door, a broken window pane, and information that the resident was away and not expected to return for a day or two)). The supreme court noted that, because

5

burglary "always carries with it the possibility of violence and therefore some special risks to human life," *State v. Nunn*, 297 N.W.2d 752, 754 (Minn. 1980), belief that a burglary may be in progress may justify an officer's warrantless entry into a home, *Lemieux*, 726 N.W.2d at 789.

Here, the district court concluded that the emergency-aid exception applied to the search of Wandzel's home, precluding his suppression motion. It held that Stemme and Rehling's observations "reasonably led the officers to be concerned that there may be a burglary in progress or a medical emergency." The district court further determined that "the officers would have been derelict in their duty had they not entered the home" and their "decision to enter the home without a warrant was reasonable." We "independently review the facts and determine, as a matter of law, whether the evidence need be suppressed." *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992).

Wandzel argues that the district court erred in denying his motion to suppress the evidence obtained from the warrantless entry into his home, challenging the district court's findings on two prongs of the test articulated in *Lemieux*. He maintains that the state failed to meet its burden of proving that the emergency-aid exception applied to the warrantless entry into his home because the record does not support finding an immediate need for police assistance to protect life or property and no reasonable basis approximating probable cause existed to associate the purported emergency with the home.

We first turn to the reasonableness of the officers' belief that there was an immediate need for their assistance because of a possible burglary or domestic disturbance, applying an objective standard. *See Lemieux*, 726 N.W.2d at 788. The relevant circumstances

6

before the officers' entry included the 9-1-1 call reporting "suspicious activity" at Wandzel's address, the wide-open front door, the damaged garage door, and the lack of response upon knocking. Additionally, Wandzel urges us to consider that it was a warm, sunny morning; the officers saw no evidence of damage or a forced entry; the officers saw no indication of injury or a safety threat to the occupants; and the officers testified that they did not know when the damage to the garage door occurred.

Considering the totality of these circumstances, we focus on the significance of the wide-open front door. We acknowledge that the circumstances here lack the connection to another crime that was present in *Lemieux*, which gave rise to the test we now apply. *See* 726 N.W.2d at 784 (noting the suspected burglarized residence's proximity to a "seemingly random homicide"). But, although Minnesota caselaw does not directly address whether the unique circumstances present here satisfy the first element of the test, some sister state courts have found reasonable the belief that a burglary is in progress or recently occurred based primarily on an open door. *See, e.g.*, *People v. Lemons*, 830 N.W.2d 794, 798 (Mich. Ct. App. 2013) (upholding application of emergency-aid doctrine to police entry where front door was "open and blowing in the wind" and no one responded to the doorbell or knocks); *State v. Alexander*, 721 A.2d 275, 277 (Md. Ct. Spec. App. 1998) (applying emergency-aid exception to search based on caller's report that next-door neighbor's basement door was open and that he believed the neighbor was away); *cf. Johnson v. City of Memphis*, 617 F.3d 864, 866 (6th Cir. 2010) (finding warrantless home entry justified where officers were responding to an emergency hang-up phone call, the emergency dispatcher's return call was unanswered, the front door to the residence was open, and

officers announced their presence and received no response). *But see State v. Christenson*, 45 P.3d 511, 513 (Or. Ct. App. 2002) (concluding that an open front door on a summer morning was not enough to give rise to a reasonable belief that entry was necessary to prevent harm to persons or property). We find the reasoning of these sister courts persuasive. Therefore, we conclude that it was objectively reasonable for the officers to believe that, based on the circumstances here, an emergency was at hand and their assistance was needed for the protection of life or property.

Next, we turn to the officers' basis to associate the potential burglary or domestic disturbance with the home, which must approximate probable case. We conclude that the 9-1-1 call to report "suspicious activity" at the house, the wide-open front door, the damaged garage door, and the lack of response upon knocking sufficiently linked the purported emergency with Wandzel's residence. Accordingly, the state met its burden of proving that the emergency-aid exception applied to the warrantless entry of Wandzel's home, and the district court properly denied his suppression motion.

**Affirmed.**