SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-10-0315-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CR 08-0857 |
| LAQUINN ANTHONY FISHER, | ) | |
| | ) | Maricopa County |
| Appellant. | ) | Superior Court |
| | ) | No. CR2006-129825-001 SE |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Connie Contes, Judge
The Honorable Silvia R. Arellano, Judge (ret.)

**REMANDED**

_____

Opinion of the Court of Appeals Division One
225 Ariz. 258, 236 P.3d 1205 (App. 2010)

**VACATED**

_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Chief Counsel
          Criminal Appeals/Capital Litigation Section
          Joseph T. Maziarz, Assistant Attorney General
Attorneys for State of Arizona

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER               Phoenix
     By   Margaret M. Green, Deputy Public Defender
Attorneys for Laquinn Anthony Fisher

_____

**B R U T I N E L**, Justice

¶1        The   question   presented   is   whether   police   officers

lawfully conducted a protective sweep of a suspect's apartment when he and other occupants were detained outside. We find the protective sweep violated the Fourth Amendment under the circumstances of this case.

## I. FACTS AND PROCEDURAL BACKGROUND

¶2        In May 2006, Mesa police responded to a call alleging an aggravated assault. The victim, who was bleeding from a cut on his head, told police he had been pistol-whipped by a man known as "Taz." The victim described Taz and directed police to an apartment complex where he believed Taz lived.

¶3        Other officers went to that apartment complex, where Laquinn Anthony Fisher lived. After officers knocked and announced their presence, Fisher and two others came out. None had a weapon and all three were cooperative. Fisher, whose appearance matched the description given by the victim, identified himself to officers as "TA."[1]

¶4        Despite having this information, officers thought further investigation was necessary because the gun allegedly used in the assault was still "unaccounted for." Apparently without asking whether anyone was still inside, police entered the apartment to see if anyone else was present. Inside, officers smelled marijuana and observed open duffle bags

---

[1]    The responding officer testified that the police dispatch broadcast said the suspect went by both "TA" and "Taz."

containing marijuana. They did not find anyone in the apartment. After the sweep, officers obtained written consent from Fisher's roommate to search the apartment and seized the marijuana. Officers later brought the assault victim to the apartment, and he identified Fisher as his attacker.

¶5      Charged with various crimes, including possession of marijuana for sale, Fisher moved to suppress any evidence of the marijuana found in the apartment. The trial court denied the motion, and a jury subsequently found Fisher guilty of the possession charge.[2] The court of appeals affirmed, reasoning as follows: "Because the weapon used in the assault in this case was unaccounted for and the police articulated sufficient reasons for performing the sweep, . . . the trial court did not err in determining that the protective sweep was supported by reasonable suspicion." *State v. Fisher*, 225 Ariz. 258, 260 ¶ 7, 236 P.3d 1205, 1207 (App. 2010).

¶6      We granted Fisher's petition for review because we previously have not considered the protective sweep doctrine, a matter of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") § 12-120.24 (2003).

## II. DISCUSSION

---

[2]      Before trial, the State dismissed the other charges, including the aggravated assault charge.

¶7         The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[3]  "Unlawful entry into a home is the 'chief evil' against which the provision protects."  *State v. Guillen*, 223 Ariz. 314, 316 ¶ 10, 223 P.3d 658, 660 (2010).  Typically, police officers must obtain a warrant to enter a home, but because the "touchstone of the Fourth Amendment . . . is reasonableness," the Supreme Court has recognized several exceptions to the warrant requirement.  *Michigan v. Fisher*, 130 S. Ct. 546, 548 (2009) (internal quotation omitted).

¶8         One such exception is the protective sweep, first recognized in *Maryland v. Buie*, 494 U.S. 325 (1990).  Relying heavily on *Terry v. Ohio*, 392 U.S. 1 (1968), and *Michigan v. Long*, 463 U.S. 1032 (1983), *Buie* held that "incident to [an] arrest the officers [can], as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from

---

[3]    Although Fisher's petition cites Article 2, Section 8 of the Arizona Constitution, he does not develop any separate argument based on that provision or explain how any analysis under it should differ from Fourth Amendment analysis; nor did the court of appeals address this issue.  Because a single reference to the Arizona Constitution is insufficient to preserve a claim, we do not address whether the protective sweep violated the Arizona Constitution.  *State v. Dean*, 206 Ariz. 158, 161 ¶ 8 n.1, 76 P.3d 429, 432 n.1 (2003).

4

which an attack could be immediately launched." *Buie*, 494 U.S. at 334. But to justify a broader sweep, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing danger to those on the arrest scene." *Id.*

¶9 *Buie* thus authorizes two types of limited warrantless searches. The first involves the area immediately adjacent to the place of arrest. *Id.* The second allows a search of adjoining areas where persons posing a danger might be found. *Id.; see also United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009) (explaining two types of searches approved by *Buie*); *United States v. Lemus*, 582 F.3d 958, 963 n.2 (9th Cir. 2009) (describing difference between searches authorized by *Buie*). This case concerns the second type of *Buie* search.

¶10 In *Buie*, officers conducted the protective sweep after arresting the defendant inside his residence. Here, in contrast, Fisher was detained outside his apartment and not arrested until after the protective sweep.[4] We assume, but do not decide, that a protective sweep is not forbidden when a suspect is detained and questioned but not yet arrested outside of a residence.

---

[4] The State concedes in its supplemental brief that Fisher was not under arrest when the protective sweep occurred.

¶11     Although we have upheld protective sweeps based on exigent circumstances, *see, e.g.*, *State v. DeWitt*, 184 Ariz. 464, 467, 910 P.2d 9, 12 (1996) (finding warrantless entry of home justified by burglary in progress); *State v. Greene*, 162 Ariz. 431, 433, 784 P.2d 257, 259 (1989) (upholding "protective walk-through" of residence when initial entry was based on an exigency), we have never specifically applied the *Buie* test.

¶12     *Buie* teaches that a protective sweep of a residence is permissible only if the officers have a reasonable belief supported by "specific and articulable facts" that a home "harbored an individual posing a danger to the officers or others." *Buie*, 494 U.S. at 327. Conversely, if officers act purely on speculation, a protective sweep is unreasonable. *See, e.g.*, *Archibald*, 589 F.3d at 300 ("Clearly, *Buie* requires more than ignorance or a constant assumption that more than one person is present in a residence."); *United States v. Gandia*, 424 F.3d 255, 264 (2d Cir. 2005) (requiring more than lack of information to justify a protective sweep).

¶13     The common thread among cases interpreting *Buie* is that officers must have specific articulable facts that someone who could pose a safety threat is inside a residence. *See, e.g.*, *United States v. Murphy*, 516 F.3d 1117, 1120-21 (9th Cir. 2008) (determining fact that owner of storage unit who had outstanding arrest warrant was not accounted for justified

6

officer's reasonable belief that another person could be present); *United States v. Lawlor*, 406 F.3d 37, 42 (1st Cir. 2005) (finding quick protective sweep justified when officers arrived at residence where gunshot had been reported, shooter had not been identified, and defendant "shrugged" when asked about the gun); *United States v. Gould*, 364 F.3d 578, 592 (5th Cir. 2004) (en banc) (upholding protective sweep of mobile home when officers have consent to enter bedroom and a known dangerous suspect was not in bed, as previously reported); *United States v. Taylor*, 248 F.3d 506, 514 (6th Cir. 2001) (approving protective sweep when officers heard scuffling noises from inside before being admitted into apartment and suspect's demeanor indicated he was hiding something). The more specific facts supporting a reasonable belief that an area contains a potentially dangerous individual, the more likely the protective sweep is valid. *See, e.g.*, *United States v. Tapia*, 610 F.3d 505, 511 (7th Cir. 2010) (protective sweep proper when officers had six separate valid articulable facts); *United States v. Davis*, 471 F.3d 938, 945 (8th Cir. 2006) (listing several articulable facts).

¶14 We find particularly persuasive the Second Circuit's decision in *Gandia*. There, officers responded to a reported dispute between a building superintendent and a tenant. 424 F.3d at 258. Officers were given a description of a suspect who

7

might be carrying a gun. *Id.* Upon arrival, they saw Gandia, who matched the description of the suspect, but determined that he was unarmed. *Id.* Officers escorted him to his apartment and asked if anyone else was there. *Id.* He said "no" and allowed the officers to enter his apartment, but not to search it. *Id.* Once inside, they nonetheless conducted a protective sweep and discovered a bullet. *Id.* at 259. The Second Circuit held that the sweep was invalid because the officers had no reason to believe that a person might be hiding in Gandia's apartment. *Id.* at 264. Although there was an unaccounted-for weapon, nothing indicated that "there was a person hiding in the apartment who might use it." *Id.* The court emphasized that "'lack of information cannot provide an articulable basis upon which to justify a protective sweep.'" *Id.* (quoting *United States v. Moran Vargas*, 376 F.3d 112, 117 (2d Cir. 2004)).

¶15 Similarly, the officers in this case could not articulate specific facts indicating that another person was inside Fisher's apartment. The record does not reflect any attempt by the officers to find out how many people lived with Taz. Three people, including Fisher, exited the apartment. Fisher identified himself and matched the victim's detailed description of the assailant. Although there was still an unaccounted-for weapon, as in *Gandia*, nothing indicated that anyone else was inside the apartment. Officers cannot conduct

8

protective sweeps based on mere speculation or the general risk inherent in all police work. Because the officers here did not articulate specific facts to establish a reasonable belief that someone might be in the apartment, the protective sweep was invalid.

¶16      We are mindful that:

> [P]olice officers have an incredibly difficult and dangerous task and are placed in life threatening situations on a regular basis. It would perhaps reduce the danger inherent in the job if we allowed the police to do whatever they felt necessary, whenever they needed to do it, in whatever manner required, in every situation in which they must act. However, there is a Fourth Amendment to the Constitution which necessarily forecloses this possibility.

*United States v. Colbert*, 76 F.3d 773, 778 (6th Cir. 1996). We likewise are aware of the high price of suppressing evidence. *See State v. Bolt*, 142 Ariz. 260, 266-67, 689 P.2d 519, 525-26 (1984); *cf. Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 700-01 (2009) ("The principal cost of applying the [exclusionary] rule is, of course, letting guilty and possibly dangerous defendants go free – something that 'offends basic concepts of the criminal justice system.'" (quoting *United States v. Leon*, 468 U.S. 897, 908 (1984))). But the right to privacy in one's home is "'basic to a free society.'" *Mapp v. Ohio*, 367 U.S. 643, 656 (1961) (quoting *Wolf v. Colorado*, 338 U.S. 25, 27 (1949)). Thus, specific facts, and not mere

9

conjecture, are required to justify a protective sweep of a residence based on concerns for officer safety.

### III. CONCLUSION

¶17 For the foregoing reasons, we vacate the court of appeals' opinion and remand the case to the trial court for further proceedings.

_____
Robert M. Brutinel, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
W. Scott Bales, Justice

_____
A. John Pelander, Justice