IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

*v.*

BRADLEY HAROLD WILSON,
*Appellant.*

No. CR-14-0308-PR
Filed June 3, 2015

Appeal from the Superior Court in Navajo County
The Honorable Robert J. Higgins, Judge
No. CR-2011-01027
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
235 Ariz. 447, 333 P.3d 774 (2014)
**AFFIRMED IN PART AND DEPUBLISHED**

COUNSEL:

Brett R. Rigg, Shane J. Shumway (argued), The Rigg Law Firm, P.L.L.C., Pinetop, Attorneys for Bradley Harold Wilson

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Myles A. Braccio (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER and JUSTICES BERCH, BRUTINEL, and TIMMER joined.

CHIEF JUSTICE BALES, opinion of the Court:

¶1        The Fourth Amendment generally requires police to obtain a warrant to search a home. Courts have recognized exceptions to this requirement, such as the exigent circumstances and emergency aid

exceptions. The State here urges us to extend the community caretaking exception, which applies to certain vehicle searches, to justify the warrantless search of a home. We decline to do so.

**I.**

¶2        Police officers and paramedics went to Bradley Wilson's residence after neighbors complained about his erratic behavior. Wilson said that he had "up to seven pounds of mercury" in his house in a glass jar and that he and his family had been handling the mercury over several years. Concerned about possible contamination, a paramedic contacted the fire department, which ordered Wilson to be "rinsed off." Wilson complied and was taken to a hospital to be examined.

¶3        The fire department sent a volunteer firefighter who had experience dealing with mercury spills to assess the situation at Wilson's home. Believing they should gather information for Wilson's medical treatment and noting that the outside temperature was approaching mercury's vaporization point, the firefighter and a police officer entered the home "to see if there was mercury, to see where it was at and how much there was, and get an idea of what [they] were actually dealing with."

¶4        Once inside, the officer smelled marijuana. He traced the smell to a laundry room, where several marijuana plants were hidden by a hanging blanket. The officer left and obtained a search warrant. He then re-entered the home and seized the marijuana. No mercury was found, though the officer saw an "indication of mercury" in the hallway and the firefighter saw traces on the floor. The firefighter concluded that all he could do was to tell Wilson to clean it up.

¶5        Wilson was charged with production of marijuana and three counts of possession of drug paraphernalia. Denying Wilson's motion to suppress, the trial court concluded that exigent circumstances permitted the warrantless search and admitted evidence of the marijuana. Wilson was tried and found guilty on all charges.

¶6        The court of appeals reversed the denial of the motion to suppress, finding that the search was not justified by the exigent circumstances, emergency aid, or community caretaking exceptions to the warrant requirement. *State v. Wilson*, 235 Ariz. 447, 452 ¶ 21, 333 P.3d 774,

779 (App. 2014). The State petitioned for review only as to the court of appeals' holding that the community caretaking exception did not apply.

## II.

**¶7** We review the denial of a motion to suppress evidence for an abuse of discretion, considering only the evidence presented at the suppression hearing and viewing the facts in the light most favorable to sustaining the trial court's ruling. *State v. Manuel*, 229 Ariz. 1, 4 ¶ 11, 270 P.3d 828, 831 (2011). Both the Fourth Amendment to the United States Constitution and Article 2, Section 8 of the Arizona Constitution protect against unlawful searches and seizures. The search of a home without a warrant is presumptively unreasonable, and the fruits of the search must be suppressed at trial unless some exception applies. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *State v. Bolt*, 142 Ariz. 260, 265, 689 P.2d 519, 523 (1984).

## A.

**¶8** A warrantless search of a home may be justified when "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey*, 437 U.S. at 394. Warrantless entry into a home may be justified, for example, when police are in hot pursuit of a fleeing suspect, *United States v. Santana*, 427 U.S. 38, 42–43 (1976), or reasonably believe that the destruction of evidence is imminent, *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). Officers also may make a warrantless entry onto private property to fight a fire and investigate its cause. *Michigan v. Tyler*, 436 U.S. 499, 509 (1978).

**¶9** "Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency." *King*, 131 S. Ct. at 1862. That is, an objectively reasonable basis must exist for officers to believe that the circumstances justify a warrantless entry. *See id* at 1856. Exigent circumstances exist when "a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained." *State v. Greene*, 162 Ariz. 431, 433, 784 P.2d 257, 259 (1989) (citation omitted).

**¶10** To lawfully make a warrantless entry to arrest a fleeing suspect or to prevent the imminent destruction of evidence, police must

also have probable cause. *See State v. Decker*, 119 Ariz. 195, 197, 580 P.2d 333, 335 (1978). Exigency alone does not allow police to enter for these purposes; they must also have facts - that is, probable cause - that would support issuance of a warrant if time allowed. *Cf. Florida v. Harris,* 133 S. Ct. 1050, 1055 (2013) (noting that a "police officer has probable cause to conduct a search when the facts available to [him] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present") (internal quotation marks omitted).

¶11        Incident to a lawful arrest, police may make a limited warrantless search of a residence as part of a "protective sweep." *State v. Fisher*, 226 Ariz. 563, 565 ¶ 8, 250 P.3d 1192, 1194 (2011). Such searches do not require probable cause. *Id.* Wilson was not arrested by the officers at his residence, and the State has not argued that the entry was justified by the "protective sweep" doctrine. *Cf. id.* at 566 ¶ 10, 250 P.3d at 1195 (assuming, but not deciding, that protective sweeps may be permitted when a suspect is detained and questioned but not yet arrested outside of a residence).

¶12        Officers also "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). This "emergency aid exception" does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. *Id.* at 404–05. Instead, it requires only "an objectively reasonable basis for believing," that "a person within [the house] is in need of immediate aid." *Michigan v. King*, 558 U.S. 45, 47 (2009) (internal quotation marks and citations omitted). The Supreme Court's decision in *Brigham City* supersedes our case law holding that the emergency aid exception turns on the officers' "primary motive" in entering the home. *See, e.g.*, *State v. Fisher*, 141 Ariz. 227, 237, 686 P.2d 750, 760 (1984).

¶13        Here, the court of appeals held that the exigent circumstances and emergency aid exceptions did not apply. *Wilson*, 235 Ariz. at 450–51 ¶¶ 14, 17, 333 P.3d at 777–778. Although the officers had reason to believe that a substantial amount of mercury might be present in Wilson's home, possession of mercury is not itself unlawful. The police did not believe that anyone was inside the house, and the State did not offer evidence suggesting that mercury spilled inside threatened the immediate safety of any person. *Id.* at 450 ¶ 14, 333 P.3d at 777. "Because there was neither

evidence of a crime nor evidence of an imminent threat to the health of any person or the public generally," the court of appeals concluded that exigent circumstances did not justify the entry. *Id.* Moreover, the emergency aid exception did not apply because the State offered no evidence that locating the mercury was necessary for Wilson's safety. *Id.* at 451 ¶ 17, 333 P.3d at 778. Wilson, after all, was not in the house: he was responsive and he had gone to the hospital. *Id.*

¶14 Because the State did not seek review on these issues, we assume for purposes of our analysis that the exigent circumstances and emergency aid exceptions did not apply.

**B.**

¶15 The State here urges another exception to the warrant requirement: community caretaking. In *Cady v. Dombrowski*, 413 U.S. 433 (1973), the Supreme Court upheld the warrantless search of an impounded vehicle for a firearm. Reasoning that local police frequently investigate events "in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," *id.* at 441, the Court concluded that the search was justified by "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle," *id.* at 447.

¶16 Police officers perform many tasks outside of criminal investigation that might properly be called community caretaking functions. "Any police officer at any given time may perform the responsibilities of the office by acting as a domestic-relations counselor . . . or as a midwife . . . or as a sympathetic emissary who has the unpleasant task of informing some citizen of the loss of a loved one, or even as a taker of measurements or the preparer of accident reports that may prove of value solely to some insurance adjuster." *State v. Cook*, 440 A.2d 137, 139 (R.I. 1982). But police officers do not become exempt from the Fourth Amendment's warrant requirement merely because they are engaged in community caretaking functions.

5

## C.

¶17        Although *Cady* described the warrantless search in that case as involving a community caretaking function, the Court based its reasoning on its "recognition of the distinction between motor vehicles and dwelling places." 413 U.S. at 447. The Court later clarified that "less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976); *cf. Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (observing that "when it comes to the Fourth Amendment, the home is first among equals").

¶18        In *Opperman*, the Court built on *Cady*'s foundation in approving the warrantless "inventory" search of an impounded vehicle to secure valuables or dangerous objects. 428 U.S. at 375–76. It noted that "[a]utomobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements," and that "[t]he expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel." *Id.* at 368.

¶19        The community caretaking exception recognized in *Cady* and *Opperman* thus is grounded in the reduced expectation of privacy in automobiles as distinct from homes. Recognizing this distinction, several federal courts of appeal have limited the community caretaking exception to automobiles. *See, e.g., Ray v. Township of Warren*, 626 F.3d 170, 177 (3d Cir. 2010); *United States v. Bute*, 43 F.3d 531, 535 (10th Cir. 1994); *United States v. Erickson*, 991 F.2d 529, 532 (9th Cir. 1993); *United States v. Pichany*, 687 F.2d 204, 208–09 (7th Cir. 1982).

¶20        We agree with the Seventh Circuit that *Cady* "intended to confine the holding to the automobile exception and to foreclose an expansive construction of the decision allowing warrantless searches of private homes or businesses." *Pichany*, 687 F.2d at 209; *cf. Payton v. New York,* 445 U.S. 573, 590 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). Courts in other states have reached a similar conclusion. *See, e.g., State v. Vargas*, 63 A.3d 175, 187 (N.J. 2013) (holding that, absent consent or exigent circumstances, the community caretaking doctrine does not authorize

warrantless entry into home); *State v. Gill*, 755 N.W.2d. 454, 459–60 ¶ 18 (N.D. 2008) (declining to extend the community caretaking exception to police entry into homes); *State v. Christenson*, 45 P.3d 511, 514 (Or. App. 2002) (reaching same conclusion, noting that warrantless entry might be authorized under "analogous exceptions, such as the 'emergency doctrine'").

**¶21** Some other courts have seemingly applied the community caretaking exception in approving warrantless searches of homes. But many of these opinions use the phrase "community caretaking" broadly to encompass situations involving exigent circumstances or emergency aid. *See, e.g.*, *United States v. Quezeda*, 448 F.3d 1005, 1007 (8th Cir. 2006) ("A police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention."); *State v. White*, 168 P.3d 459, 466–67 ¶ 36 (Wash. App. 2007); *State v. Alexander*, 721 A.2d 275, 285 (Md. App. 1998). A few states have explicitly combined the emergency aid and community caretaking exceptions. *See, e.g.*, *Kyer v. Commonwealth*, 601 S.E.2d 6, 12 (Va. App. 2004) ("[W]e find that any distinction between the two exceptions has been effectively eradicated in [Virginia]"). And in other cases relying on the community caretaking exception, either the exigent circumstances or emergency aid exception might have allowed the warrantless search. *See, e.g.*, *People v. Ray*, 981 P.2d 928, 933–35 (Cal. 1999) (relying on community caretaking exception to approve warrantless entry into home that police believed might have been burglarized).

**¶22** The State is not persuasive in arguing that we should extend the community caretaking exception to homes to ensure public safety. In situations involving criminal activity, fires or analogous dangers, or the need to render immediate aid, the exigent circumstances and emergency aid exceptions appropriately allow warrantless entry by law enforcement officers, whether or not they are engaged in community caretaking functions. Arizona law also authorizes county environmental or health authorities to seek a warrant authorizing entry into a building in order to "destroy, remove or prevent" a "nuisance, source of filth or cause of sickness." A.R.S. § 36-603; *see also id.* § 36-602 (requiring property owner or occupant to remove "nuisance, source of filth or cause of sickness" within twenty-four hours' notice). Extending the community caretaker exception to homes would substantially reduce the protection of privacy afforded by

the warrant requirement without significantly increasing the ability of law enforcement to make searches to protect the public.

**¶23** Our conclusion, although based on the Fourth Amendment, also comports with the Arizona Constitution, which more explicitly protects homes than does its federal counterpart. Ariz. Const. art. 2, § 8 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."). We have read our constitution's more specific language as affording greater protection to privacy in the home in some circumstances, *Bolt,* 142 Ariz. at 264–65, 689 P.2d at 523–24, and for that additional reason we are disinclined to extend the scope of the community caretaking exception beyond the automobile context.

### III.

**¶24** We hold that the community caretaking exception does not apply to homes. If exigent circumstances or an emergency requiring immediate attention are present, however, police may make a warrantless entry into the home under those exceptions. We affirm paragraphs 18–20 of the court of appeals' opinion and order that the opinion be depublished, reverse the trial court's order denying the motion to suppress, and remand to the trial court for further proceedings.