NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAYMOND ZWIEFELHOFER, *Appellant*.

No. 1 CA-CR 24-0625

FILED 10-22-2025

Appeal from the Superior Court in Maricopa County
No.  CR2022-133985-001
The Honorable Kristin Culbertson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

DM Cantor, Phoenix
By Jason David Karpel, Leah Dodd
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Andrew J. Becke joined.

---

**B R O W N**, Judge:

**¶1**         Raymond Zwiefelhofer appeals from his convictions and sentences for ten counts of sexual exploitation of a minor.  He argues the trial court erred by (1) allowing the State to introduce statements he made during custodial interrogation, (2) admitting two SD card photos allegedly disclosed two days before trial, (3) permitting other-acts evidence and giving the related jury instruction, (4) denying his request for a *Willits* instruction, and (5) allowing the State to shift the burden of proof during closing arguments.  Because no reversible error occurred, we affirm.

**BACKGROUND**

**¶2**         We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all reasonable inferences against Zwiefelhofer. *State v. Fierro*, 254 Ariz. 35, 38, ¶ 2 (2022).  On November 30, 2021, police received a cyber tip from the National Center for Missing and Exploited Children ("NCMEC") stating that Adobe Software Systems ("Adobe") flagged an account used to upload a file containing child sexual abuse material ("CSAM") titled "27.mp4" on November 9, 2021.  The Adobe account was registered under Zwiefelhofer's name, date of birth, verified email address, and phone number.  The billing address associated with the account was Zwiefelhofer's home address.

**¶3**         The cyber tip provided information about IP addresses, including Cox Communications ("Cox"), Leaseweb USA, and Verizon FIOS ("Verizon").[1]  One of the Cox login IP addresses "returned to" World

---

[1]      As explained by our supreme court in *State v. Mixton*, an internet service provider ("ISP") is

> a company that provides individuals with access to the internet.  The ISP assigns a string of numbers, called an IP address, to a customer's modem to facilitate access to the

Software Corporation's ("World Software") physical address, with the "comment line" of Cox's official return referencing "Ray Zwiefelhofer."[2] He was the president and chief executive officer of World Software at the time. The Adobe account was accessed several times on November 9, 2021 from the login IP address associated with World Software. Police also discovered that Adobe had connected to the World Software IP address 15 minutes before the 27.mp4 file was uploaded. The Verizon login IP address returned to a location in New Jersey—a business address for World Software. The Leaseweb USA IP address was assigned to a Canadian company that police discovered would "not respond to US-based search warrants."

¶4        After obtaining a warrant, in June 2022 police searched Zwiefelhofer's home for electronic devices containing CSAM. Officers seized 21 electronic devices, including a laptop computer, iPad, iPhone, and several SD cards. One of the SD cards was found connected to a USB adapter in a backpack located in Zwiefelhofer's home office. The police later discovered the SD card from the backpack was encrypted using

> internet. Consequently, a user does not control nor own an IP address. IP addresses are always attached, "like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet." When a computer accesses a website, the IP address tells the website where to transmit data. Search engines, such as Google, also log IP addresses of users and use these logs to improve the quality of search results and advertisements for visitors.
>
> An IP address alone does not reveal an internet user's identity. Rather, it generally reveals only a user's approximate geographic location, such as a neighborhood, and the user's ISP. The ISP, however, maintains records and information, such as the name, address, and telephone number associated with an IP address, known as "subscriber information."

250 Ariz. 282, 284, ¶ 2–3 (2021) (citations omitted).

[2]        As a detective explained, an IP address is "an identifier for where a device potentially was at the time of an incident occurring. So you can have IP addresses assigned to anything, to cell phones, tablets, computers, [and] anything that can touch a network and receive connectivity. . . ."

BitLocker, and the key to the BitLocker encryption was found on Zwiefelhofer's laptop. The SD card contained approximately 87 CSAM files, including the 27.mp4 file. A nurse practitioner examined 10 of the 87 CSAM files to determine a sexual maturity rating.

**¶5**　　　　At trial, the defense requested a *Willits* instruction, claiming the State failed to obtain material evidence. The court denied the defense's request. The court also denied the defense's motion to strike portions of the State's closing argument and curative jury instruction request, asserting the requested instruction was already included in the final jury instruction. Zwiefelhofer unsuccessfully motioned for a new trial. He timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033.

## DISCUSSION

### A.　　Motion to Suppress

**¶6**　　　　While the search of the home was ongoing, a detective interviewed Zwiefelhofer in an unmarked police vehicle. Zwiefelhofer claims he made requests for an attorney three times during this interview. First, in response to the detective asking the question "What about the passwords for the iPad?", Zwiefelhofer stated, "Um, I'd rather not do that until I talk to an attorney if I'm not sure what's going on, so." Second, in response to the detective asking the question, "[I]s there any objection you had to giving us your passwords at this time?", Zwiefelhofer responded "Well, should I talk to my attorney or not?" Third, in response to the detective's statement that he required a "six digit not a four digit" password, Zwiefelhofer stated, "I don't know, maybe I should talk to [an] attorney, I feel really bad right now." Throughout the interview, Zwiefelhofer denied he had interacted with CSAM, and ultimately gave the detective his iPhone, iPad, and laptop passwords.

**¶7**　　　　Zwiefelhofer moved to suppress the statements he made when disclosing his passwords to the detective. During a July 2024 evidentiary hearing, the parties stipulated Zwiefelhofer was advised of his *Miranda* rights and subject to custodial interrogation. The trial court denied the motion to suppress, finding he did not unequivocally invoke his right to counsel and his statements were "freely and voluntarily made."

**¶8**　　　　Zwiefelhofer argues the statements in which he gave the detective his passwords were involuntary because he was denied an attorney, was coerced into providing a password, and had no experience with the criminal justice system. We review the denial of a motion to

4

suppress evidence for abuse of discretion. *State v. Wilson*, 237 Ariz. 296, 298, ¶ 7 (2015). We only consider evidence presented at the suppression hearing, viewing those facts in the light most favorable to upholding the trial court's ruling. *State v. Maciel*, 240 Ariz. 46, 49, ¶ 9 (2016).

**¶9** To be admissible at trial, a defendant's confession must be voluntary. *State v. Ellison*, 213 Ariz. 116, 127, ¶ 30 (2006). In Arizona, confessions are presumed to be involuntary, *id.* at ¶ 31, and the State has the burden of proving by preponderance of the evidence that the confession was "freely and voluntarily made," *State v. Montes*, 136 Ariz. 491, 496 (1983). We determine whether a confession is voluntary by examining the totality of the circumstances to decide "whether the will of the defendant [was] overborne." *State v. Lopez*, 174 Ariz. 131, 137 (1992). We consider several factors in making this determination, including the interrogation environment, whether *Miranda* warnings were given, the interrogation duration, and whether impermissible police questioning occurred. *State v. Blakley*, 204 Ariz. 429, 436, ¶ 27 (2003).

**¶10** The Fifth Amendment of the United States Constitution grants individuals the privilege against compulsory self-incrimination. *Maciel*, 240 Ariz. at 49, ¶ 10. In accordance with this right, officers must provide *Miranda* warnings before custodial interrogation begins. *Id.* *Miranda* warnings include the right to presence of counsel, and if the individual who is interrogated asserts this right, "all questioning must cease until an attorney is present or the defendant reinitiates communication." *State v. Newell*, 212 Ariz. 389, 397, ¶ 24 (2006). However, the defendant must clearly and unambiguously request counsel, articulating the "desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994); *see also State v. Eastlack*, 180 Ariz. 243, 250–51 (1994); *State v. Spears*, 184 Ariz. 277, 286 (1996). If a defendant makes an ambiguous or unclear comment requesting counsel, the officer may continue interviewing the defendant if a reasonable officer "would have understood only that the suspect *might* be invoking the right to counsel." *Davis*, 512 U.S. at 459.

**¶11** We agree with the trial court that Zwiefelhofer's statements were ambiguous. In none of the statements on which he relies did he unequivocally ask to speak with an attorney (or have one present) before continuing the interrogation. Because he did not unequivocally invoke the right to counsel, the detective was "not constitutionally required either to clarify the statement or to stop the[] questioning." *Ellison*, 213 Ariz. at 127, ¶ 29 ("'I think I might want an attorney,'" was an equivocal request for

counsel."); *see also Davis*, 512 U.S. at 462 (finding "maybe I should talk to a lawyer" was not an unequivocal request for counsel); *Eastlack*, 180 Ariz. at 250–51 (holding "I think I better talk to a lawyer first" was not an unequivocal request for counsel). The trial court also found no circumstances showed Zwiefelhofer's will was overborne, or that the detective was coercive or overreaching. We defer to the court's reasonable evaluation of evidence and therefore conclude Zwiefelhofer has not shown an abuse of discretion.

### B. Disclosure Violation

**¶12** Two business days before trial, the State disclosed two photos from an unallocated space on the SD card. The photos depicted a portion of the interior of Zwiefelhofer's home. On the first day of trial, the defense filed a motion in limine, asserting the State untimely disclosed the photos under Arizona Rule of Criminal Procedure ("Criminal Rule") 15. The State argued it met disclosure obligations by allowing the defense to previously view the SD card and the defense expert "had access to the whole SD card." The State added that the detectives would testify that the two photos fairly and accurately represented what the detectives viewed on the SD card. The trial court ultimately denied the motion in limine, subject to revisiting the issue if the State could not "establish the pieces they . . . avowed to the Court" they could establish. Zwiefelhofer argues the court erred in denying the motion.

**¶13** We review a decision to impose sanctions under Criminal Rule 15 for an abuse of discretion. *State v. Naranjo*, 234 Ariz. 233, 242, ¶ 29 (2014). The "[d]enial of a [disclosure] sanction is generally not an abuse of discretion if the trial court believes the defendant will not be prejudiced." *State v. Towery*, 186 Ariz. 168, 186 (1996).

**¶14** Criminal Rule 15.1(b)(5) requires the State to make available to the defendant, among other things, "a list of all documents, photographs, other tangible objects, and electronically stored information the State intends to use at trial or that were obtained from or purportedly belong to the defendant." Ariz. R. Crim. P. 15.1(b)(5). All disclosures must be made at least seven days before trial. Ariz. R. Crim. P. 15.6(c). When a party violates Criminal Rule 15.6, the court may impose any sanction it finds appropriate unless the court determines that "the failure to comply was harmless." Ariz. R. Crim. P. 15.7(b)(1).

**¶15** We agree with the trial court's ruling. Zwiefelhofer was informed at an evidentiary hearing held nearly two months before trial that

a photo showing part of the interior of his home was found on the SD card. Also, the photos were not critical evidence on which the State's case relied. *Cf. Jimenez v. Chavez*, 234 Ariz. 448, 451, 453 (App. 2014) (finding that preclusion of critical DNA evidence was a proper sanction because the State failed to disclose the evidence until the day before trial and the evidence was "indispensable" to the [S]tate's case). And Zwiefelhofer admits that the "photos were not essential to the State's case."

¶16 Even assuming the trial court improperly admitted the photographs, the admission is harmless because the evidence was cumulative. *See State v. Williams*, 133 Ariz. 220, 226 (1982) (finding that the admission of cumulative evidence constitutes harmless error). Cumulative evidence is evidence that establishes or augments a point already proven by other evidence. *See Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 526, ¶ 22 (App. 2014); *see also State v. Kennedy*, 122 Ariz. 22, 26 (App. 1979). The photos were but one piece of evidence the State used to show that Zwiefelhofer knowingly possessed the SD card. The State also relied on the following to show knowing possession of the SD card: the location of the SD card, the encryption key on his laptop under his profile, the CSAM file name alterations, and the photo of the interior of Zwiefelhofer's home that was disclosed at the evidentiary hearing. Zwiefelhofer has not shown the court abused its discretion by denying the motion in limine. Accordingly, we need not address Zwiefelhofer's argument that the late disclosure violated his rights to due process and a fair trial, which he raises for the first time on appeal.

## C. Evidence of Other Acts

¶17 Zwiefelhofer argues the trial court erred by granting the State's motion to admit other-acts evidence under Arizona Rule of Evidence ("Rule") 404(b) and by admitting other-acts evidence at trial, contending the State did not prove by clear and convincing evidence that Zwiefelhofer knowingly possessed the images. We review the admission of other-acts evidence for an abuse of discretion. *State v. Lehr*, 227 Ariz. 140, 147, ¶ 19 (2011).

¶18 Before trial, the State moved to admit evidence of the 77 CSAM files located on the SD card. Zwiefelhofer responded, asserting the additional non-charged CSAM files and the file names on the SD card should be precluded. The court conducted an evidentiary hearing and ultimately granted the State's motion, finding that Zwiefelhofer's commission of the other acts was supported by clear and convincing evidence and could be admitted. In making this determination, the court

considered evidence that all the materials were discovered on the same SD card, the encryption key to the SD card was located on Zwiefelhofer's laptop, and the SD card was found in his backpack in his home office.

**¶19** At trial, the detective testified that a total of 87 CSAM files were found. Before closing arguments, the defense claimed that the State did not adequately describe the other 77 CSAM files. The defense therefore contended the State could not move forward with the Rule 404(b) allegations and it would be improper to instruct the jury on that issue. The court ultimately allowed the Rule 404(b) instruction.

**¶20** Rule 404(b)(1) prohibits the admission of other crimes, wrongs, or acts into evidence to prove an individual acted in conformity with their character. However, Rule 404(b)(2) permits the admission of this evidence "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The State must prove by clear and convincing evidence that the defendant committed the other "crimes, wrongs, or acts." *See* Ariz. R. Evid. 404(b)(1); *State v. Terrazas*, 189 Ariz. 580, 582 (1997).

**¶21** Zwiefelhofer has not shown the court erred in finding at the evidentiary hearing there was clear and convincing evidence he possessed the images; nor has he shown the jury incorrectly weighed the evidence at trial. The court did not abuse its discretion by admitting the images.

**¶22** Zwiefelhofer also contends the trial court erred in instructing the jury on other-acts evidence under Rule 404(b) because the State did not show by clear and convincing evidence that he committed the other acts. We review the court's decision to give a jury instruction for abuse of discretion. *State v. Aragon*, 252 Ariz. 525, 528, ¶ 6 (2022).

**¶23** Zwiefelhofer asserts the detective's testimony that the 77 non-charged files were CSAM was insufficient to meet the required burden of proof. Zwiefelhofer argues a description of each CSAM was necessary for the court to issue a Rule 404(b) jury instruction. We disagree.

**¶24** The detective testified at trial that 87 CSAM files were on the SD card on which 27.mp4 was found. Given this information, a reasonable

jury could find clear and convincing evidence to conclude the 77 CSAM files, located on the same SD card, were possessed by Zwiefelhofer.[3]

### D. Denial of *Willits* Instruction

**¶25** Zwiefelhofer argues the trial court abused its discretion by denying his *Willits* jury instruction request because law enforcement officers failed to obtain material evidence that had a high likelihood of being exculpatory. A *Willits* instruction informs jurors that they may draw a negative inference from the State's explanation for destroyed or unobtained evidence. *State v. Willits*, 96 Ariz. 184, 191 (1964); *see also State v. Hernandez*, 250 Ariz. 28, 30, ¶ 1 (2020). We review *Willits* instruction rulings for abuse of discretion. *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 7 (2014).

**¶26** "Generally, a defendant is entitled to a *Willits* instruction if: (1) the [S]tate failed to preserve obviously material and reasonably accessible evidence that could have had a tendency to exonerate the accused; and (2) there was resulting prejudice." *Hernandez*, 250 Ariz. at 31, ¶ 10 (citing *Glissendorf*, 235 Ariz. at 152, ¶ 18). To prove the first prong, the defendant "must do more than simply speculate about how the evidence might have been helpful." *Glissendorf*, 235 Ariz. at 150, ¶ 9*; see, e.g., State v. Murray*, 184 Ariz. 9, 33 (1995) ("A *Willits* instruction is not given merely because a more exhaustive investigation could have been made."). Rather, evidence is obviously material "when, at the time the [S]tate encounters the evidence during its investigation, the [S]tate relies on the evidence or knows the defendant will use the evidence for his or her defense." *Hernandez*, 250 Ariz. at 33, ¶ 16.

**¶27** Zwiefelhofer does not argue the State destroyed or lost evidence. Instead, he asserts that the State failed to obtain numerous pieces of evidence, including additional information from Adobe, electronic devices from World Software, information from Microsoft regarding BitLocker, and cell tower records from Verizon.

---

[3] At the evidentiary hearing, the trial court explained that the Rule 404(b) evidence should "never be the actual pictures themselves, but only testimony to the reference that the Defendant possessed those 77 other pictures or that they were found on the same micro SD card that was seized during this search." The detective's trial testimony complied with these limitations.

¶28 Zwiefelhofer's assertion is unavailing because the evidence he asserts the State failed to obtain was not "obviously material." At the time of investigation, the officers had no reason to believe additional evidence was necessary to prove Zwiefelhofer's possession of CSAM material. *See, e.g.*, *Hernandez*, 250 Ariz. at 33, ¶ 19 (finding that because an officer had identified the suspect, the officer was not required to collect fingerprint or DNA evidence to identify the suspect); *State v. Perez*, 141 Ariz. 459, 464 (1984) (concluding that destruction of a video did not prejudice the defendant because an eyewitness identified the defendant and the defendant offered no proof the video would have proven his mistaken identity defense). The detectives had multiple pieces of evidence verifying that Zwiefelhofer's Adobe account was the account used to access 27.mp4. The Adobe search warrant results identified Zwiefelhofer as the owner of the Adobe account affiliated with 27.mp4, listing his date of birth, phone number, two verified email addresses, and his home address.

¶29 Zwiefelhofer does not point to any evidence suggesting that he would later claim another person uploaded CSAM using his work laptop. *See, e.g.*, *Hernandez*, 250 Ariz. at 33, ¶ 19 (ruling that because the officers had no knowledge the defendant would claim the existence of an alternate suspect, DNA and fingerprint evidence was not "obviously material" at the time of the investigation). Given the information the detectives had at the time of the investigation, Zwiefelhofer failed to show the other evidence was obviously material.

¶30 Even if such evidence was obviously material, Zwiefelhofer failed to show that the uncollected evidence tended to exonerate him. To meet this burden, he had to show that there was "a real likelihood that the evidence would have had evidentiary value." *Glissendorf*, 235 Ariz. at 150, ¶ 9. But Zwiefelhofer's belief that this evidence would exonerate him is mere speculation. At most, the evidence might have suggested another individual possessed the CSAM in addition to Zwiefelhofer. Because he has failed to meet the first prong of the *Willits* test that the evidence was "obviously material" and "had a tendency to exonerate" him, we need not address the second prong. *See Hernandez*, 250 Ariz. at 31, ¶ 10. The trial court did not abuse its discretion in denying Zwiefelhofer's request for a *Willits* instruction.

### E. Closing Arguments

¶31 Zwiefelhofer contends the trial court erred in denying his two motions to strike certain statements the State made during closing arguments and by failing to administer a curative jury instruction. He

argues that the statement, "Where is the evidence that all of these people at the defendant's company used this account? There is none. Defense wants you to guess," violated his constitutional rights to due process and a fair trial and wrongfully shifted the burden of presenting evidence.

**¶32**        "When a prosecutor comments on a defendant's failure to present evidence to support his or her theory of the case, it is neither improper nor shifts the burden of proof to the defendant so long as such comments are not intended to direct the jury's attention to the defendant's failure to testify." *State v. Sarullo*, 219 Ariz. 431, 437, ¶ 24 (App. 2008). Here, Zwiefelhofer testified, and the statement was not improper burden shifting because the State was highlighting the defense's failure to present evidence supporting its theory. Thus, the court did not err by denying Zwiefelhofer's motion to strike and request for a curative jury instruction request. *See State v. Morris*, 215 Ariz. 324, 337, ¶ 58 (2007) ("A prosecutor has wide latitude in presenting arguments to the jury.").

**¶33**        Zwiefelhofer further contends that the State's argument, "the facts are that this Adobe account was accessed from the defendant's work and his home," was unsupported by any evidence and the court abused its discretion by denying his motion to strike that comment.

**¶34**        Prosecutors are allowed to argue all reasonable inferences supported by the evidence. *State v. Hughes*, 193 Ariz. 72, 85, ¶ 59 (1998). It is reasonable to infer that the Cox login IP address that returned to Zwiefelhofer's home address meant that the Adobe account had been accessed from his home. The statement was not improper and thus the court did not err in denying his motion to strike.

**¶35**        Even assuming the statements were improper, the preliminary and final jury instructions were sufficient to inform the jurors what statements could be considered as evidence. *See State v. Ramirez*, 178 Ariz. 116, 127 (1994) ("[W]e presume that the jury read and followed the relevant instruction."). During preliminary instructions the jurors were informed that "[s]tatements or arguments made by the lawyers in the case are not evidence." Additionally, the final jury instructions informed the jurors that the lawyers "opening statements and closing arguments . . . [are] not evidence." When the jury is properly instructed, "the trial court is not required to provide additional instructions that do nothing more than reiterate . . . the instructions." *State v. Salazar*, 173 Ariz. 399, 409 (1992). The

court did not abuse its discretion by denying Zwiefelhofer's motions to strike and requested curative jury instruction.[4]

## CONCLUSION

¶36      We affirm Zwiefelhofer's convictions and sentences.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR

---

[4]      Zwiefelhofer also challenges the trial court's denial of the motion for new trial. Because he relies on the same arguments presented above, he has not shown the court erred in denying the motion.